UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WENDY LEE COLLINS, | ) | |
| | ) | Case No. 5:18CV1464 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD NUGENT |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Wendy Lee Collins ("Collins" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On June 8, 2015, Collins protectively filed an application for SSI benefits, alleging disability beginning August 6, 2014. (R. 9, Transcript ("tr."), at 15, 209-218, 240-252.) Collins's application was denied initially and upon reconsideration. *Id.* at 82-97, 98-112.

1

Thereafter, Collins filed a request for a hearing before an administrative law judge (ALJ).  *Id.* at 124-125.

The ALJ held the hearing on October 3, 2017.  (R. 9, tr. at 32-81.)  Collins appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 34, 36-75.)  A vocational expert ("VE") also attended the hearing and provided testimony.  (*Id.* at 34, 75-80.)

On November 22, 2017, the ALJ issued her decision, applying the standard five-step sequential analysis to determine whether Collins was disabled.  (R. 9, tr. at 15-25; *see generally* 20 C.F.R. § 416.920(a).)  The ALJ concluded Collins was not disabled.  *Id.* at 24-25.

The Appeals Council denied Collins's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (R. 9, tr. at 1-3.)  Collins now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  Collins presents a single legal issue for the court's review: "Whether the ALJ properly applied the treating physician rule to the medical opinions of treating physician Andrew McLaughlin, D.O."  (R. 11, PageID #: 724.)

## II.  PERSONAL BACKGROUND INFORMATION

Collins was born in 1964, and was 50 years old, which is defined an individual closely approaching advanced age, on the date she filed the application.  (R. 9, tr. at 23, 37, 209.)  She has at least a high school education, and is able to communicate in English.  (R. 9, tr. at 23, 243, 245.)  Collins has past work as a leasing agent, casher/checker, and a bindery worker.  (R. 9, tr. at 76-77.)

III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Collins's brief alleging error by the ALJ.  As noted earlier, Collins applied for SSI benefits on June 8, 2015, alleging disability beginning August 6, 2014.  (R. 9, tr. at 15, 209-218.)  Claimant listed her physical or mental conditions that limit her ability to work as: "back injury."  *Id.* at 244; *see also id.* at 372.

On July 21, 2015, William E. Mohler, M.A., conducted a consultative psychological evaluation.  (R. 9, tr., at 371-375.)  Psychologist Mohler reviewed claimant's SSA report, and otherwise relied on claimant's self-report.  *Id.* Collins reported to the psychologist that she had applied for disability "Because of my back, I can't function."  *Id.* at 371.  Mohler reported that Collins, at the interview, was "cooperative, somewhat friendly and very anxious," and her speech was normal, relevant, and coherent.  *Id.* at 373.  Collins reported a long-term history of anxiety, with frequent panic attacks "almost every day if she goes out."  *Id.*  "Symptoms are fairly classic panic attack symptoms, general apprehension, difficulty breathing, heart racing and perspiration."  *Id.*

Mohler found that Collins was oriented to person, place, date and situation, and that her memory functions were in the normal range.  (R. 9, tr., at 373.)  Her concentration was generally adequate, and she had no difficulty with attention span or distractibility.  *Id.*  No psychological testing was performed during Mohler's interview.  *Id.* at 374.  Based on the interview, the psychologist assessed Collins with Panic Disorder.  *Id.*  Mohler opined that the Collins's prognosis was "quite guarded.  She has a substantial and worsening anxiety disorder."  *Id.*  He asserted that her prognosis "would improve greatly with some treatment."  *Id.*

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

The psychologist's conclusion was that Collins had "serious back problems as well as a worsening and substantial anxiety disorder which is untreated.  Intellectually she is functioning in the normal range."  (R. 9, tr., at 374.)  Her ability to understand, remember, and carry out instructions is normal.  *Id.*  She does not have any problems with attention span or distractibility, and there is no evidence that she would have difficulty maintaining persistence and pace.  *Id.*  The psychologist's functional assessment regarding her ability to respond to work pressures is: "At this point, it would be virtually impossible for her to work in any environment other than at home.  She would not be able to tolerate the elevated anxiety in the work setting and would overreact to even minor levels of stress resulting in substantial increase in panic attack symptoms."  *Id.* at 375.

State agency consulting physician William Bolz, M.D., completed a "Physical Residual Functional Capacity Assessment" on September 4, 2015.  (R. 9, tr., at 90-92.)  Dr. Bolz determined Collins was capable of medium work, with the ability to stand or walk about six hours, and the ability to sit for six hours, of an eight-hour workday.  *Id.* at 90.  Dr. Bolz opined that Collins can frequently climb ramps or stairs; can occasionally climb ladders, ropes, or scaffolds; and can frequently stoop, kneel, crouch, or crawl.  *Id.* at 91.  These postural limitations are due to claimant's degenerative disc disease.  *Id.*  Dr. Bolz opined that Collins would need to avoid concentrated exposure to extreme cold, dangerous machinery, unprotected heights, and commercial driving.  *Id.* at 91-92.

On reconsideration on December 19, 2015, state agency reviewing physician Abraham Mikalov, M.D., determined Collins was capable of light work, with the ability to stand or walk about six hours, and the ability to sit for six hours, of an eight-hour workday.  (R. 9, tr., at 104-105.)  Dr. Mikalov opined that Collins can frequently climb ramps or stairs; can occasionally

4

climb ladders, ropes, or scaffolds; can occasionally stoop, and can frequently kneel, crouch, or crawl. *Id.* at 105-106. These postural limitations are due to claimant's degenerative disc disease. *Id.* at 106. Dr. Mikalov agreed that Collins would need to avoid concentrated exposure to extreme cold, dangerous machinery, unprotected heights, and commercial driving. *Id.*

On August 11, 2017, Andrew McLaughlin, D.O., completed a one-page form, entitled "Medical Statement – Physical Abilities and Limitations," along with a one-page "Off-Task/Absenteeism Questionnaire." (R. 9, tr., at 576-577.) On the medical statement, Dr. McLaughlin indicated that Collins was diagnosed with spondylolisthesis and lumbar disc disease. *Id.* at 576. The doctor marked that Collins was capable of working one hour per day, and could stand for 15 minutes at one time. *Id.* She was capable of lifting less than five pounds, could never bend or stoop, and could occasionally balance. *Id.* She could never work around dangerous equipment, or tolerate heat, cold, dust, smoke, fumes or heights. *Id.* On the off-task page, Dr. McLaughlin indicated that Collins would be off-task at least 20% of the time at work, and her impairments or treatment would cause her to be absent from work about four times per month. *Id.* at 577.

On September 29, 2017, Jonathon Raddish, CNP, completed the one-page "Off-Task/Absenteeism Questionnaire" as well. (R. 9, tr., at 657.) Nurse-Practitioner Raddish also marked that Collins would be off-task at least 20% of the time at work, and her impairments or treatment would cause her to be absent from work about three times per month. *Id.* The nurse indicated that her impairments were lumbar spondylolisthesis, lumbar disc displacement, lumbar stenosis, and low back pain. *Id.*

On October 9, 2017, Gregory J. Jurica, LPCC, also completed the one-page "Off-Task/Absenteeism Questionnaire." (R. 9, tr., at 664.) Counselor Jurica marked that Collins

5

would be off-task at least 20% of the time at work, and her impairments or treatment would cause her to be absent from work about four times per month. *Id.* The counselor indicated that her impairments included panic disorder and chronic anxiety, along with chronic back pain. *Id.* Jurica noted Collins had difficulty completing tasks due to low frustration tolerance. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her November 22, 2017, decision:

> 1. The claimant has not engaged in substantial gainful activity since June 8, 2015, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with mild spondylolisthesis of the lumbar spine and spondylosis of the lumbar spine; and anxiety disorder with panic attacks (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds, and stoop. She can frequently kneel, crouch, and crawl. The individual must avoid concentrated exposure to extreme cold and avoid exposure to moving mechanical parts and unprotected heights and can perform no commercial driving. She can perform simple routine tasks in an environment free of fast-paced production requirements and with few changes with changes explained in advance. She can have occasional superficial interaction with supervisors, coworkers and the general public (meaning no arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others).
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on \*\*\*, 1964, and was 50 years old, which is an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

6

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since June 8, 2015, the date the application was filed (20 CFR 416.920(g)).

(R. 9, tr. at 17, 18, 20, 23, 24.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §  416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* §404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* §404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional

7

>capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* §404.1520(a)(4)(v).
>
>The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*,

8

321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Collins presents the following legal issue for the court's review: "Whether the ALJ properly applied the treating physician rule to the medical opinions of treating physician Andrew McLaughlin, D.O." (R. 11, PageID #: 724.) Specifically, Collins contends that remand is appropriate because the ALJ failed to provide good reasons for assigning little weight to Dr. McLaughlin's opinion. *Id.* at 725.

The ALJ's decision addressed Dr. McLaughlin's opinion as follows:

> The undersigned assigns little weight to the treating physician's opinion, as the opinion does not merit controlling weight (Andrew McLaughlin, D.O., 8/11/2017, Exhibit 16F). Although he is an acceptable medical source and a treating source by being a physician and providing services at Falls Family Practice, the limitations that he opined are extreme (never bend/stoop) and are not supported by her activities of daily living (cleaning, laundry, driving, caring for her cat, and tending to her yard).

(R. 9, tr., at 22.) In contrast, the ALJ gave great weight to the opinions of the state agency medical consultants, Dr. Bolz and Dr. Mikalov, who opined that Collins could perform light work with postural and environmental limitations, which the ALJ found to be consistent with the record.[2] *Id.*

---

[2] State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 416.913a; 416.927(e).

9

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," reflects the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 Fed. Reg. 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 416.927 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.") Plaintiff's claim was filed before March 27, 2017.

162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 416.927(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

      Collins argues that the ALJ erred in assessing Dr. McLaughlin's opinion in several ways. She contends that the ALJ failed to address the "Off-Task/Absenteeism Questionnaire" as a separate opinion, and that failure to address an opinion is grounds for reversal under *Blakley*. (R. 11, PageID #: 726-727, citing *Blakley*, 581 F.3d at 407-408.) In *Blakley*, the Sixth Circuit noted that the ALJ had "placed nothing on the record indicating that she considered the opinion of Dr. Kiefer as a treating physician." *Blakley*, 581 F.3d at 407. Finding error, the court asserted that the doctor's opinion should have been given controlling weight, absent good reasons, but the doctor "is not mentioned anywhere in the ALJ's opinion." *Id.* at 408. Such is not the case before this court. The ALJ here determined that Dr. McLaughlin was a treating physician; and, moreover, provided a specific citation to the two-page opinion contained in Exhibit 16F. (R. 9, tr., at 22, citing "Exhibit 16F," that is, tr., at 575-577.) Although claimant characterizes the two pages comprising the doctor's opinion as two separate opinions (R. 11, PageID #: 726), the court

11

finds such argument unavailing.[4] Even though two pages are each signed by the doctor, they have the same date, and were submitted in the record as a single enclosure (R. 9, tr., at 575), with contiguous pagination. Furthermore, while the ALJ must consider all the evidence in the record, there is no requirement that the ALJ's decision discuss every single piece of evidence. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004).

Collins also argues that the ALJ's assessment that "the limitations that [Dr. McLaughlin] opined are extreme (never bend/stoop)" is an impermissible unexplained generalization. (R. 11, PageID #: 727, quoting R. 9, tr., at 22.) However, the ALJ supported her conclusion in the same sentence, pointing out that such an extreme limitation was not supported by claimant's reported activities of daily living, such as "cleaning, laundry, driving, caring for her cat, and tending to her yard," all activities which would ordinarily involve some bending or stooping. (R. 9, tr., at 22; *see also id.* at 18.) Although Collins contends that she did such activities "with difficulty and at her own pace" (R. 11, PageID #: 727), the fact remains that she was able to accomplish them—which as the ALJ aptly concluded, remains drastically inconsistent with the doctor's opinion that she could, for example, never bend/stoop.

---

[4] This court examines all the evidence in the record, regardless of whether such evidence was cited in the decision. *See Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5. Although the Commissioner raises this argument as a "harmless error" issue, many courts have found physicians' opinions that largely consist of one word answers, circles, and check-marks, as did the doctor's here, to be "weak evidence at best." *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016); *see also Shepard v. Commissioner*, No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017); *Ellars v. Commissioner*, No. 15-4039, 2016 WL 2610234, at *2-*3 (6th Cir. May 6, 2016); *Bayes v. Berryhill*, No. 3:16CV02822, 2018 WL 791323, at *3 (N.D. Ohio Feb. 8, 2018), *aff'd*, 757 Fed. Appx 436 (6th Cir. 2018); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016).

The ALJ's assessment of Dr. McLaughlin's opinion, although brief, identified the doctor as a treating physician, thereby considering the treatment relationship; assessed the nature and extent of the relationship by noting it was through a family practice; addressed the supportability of the opinion by concluding it did "not merit controlling weight" and identified exemplary limitations that were "not supported" by the record; and indicated the doctor's opinion lacked consistency with the evidence.  *See generally* 20 C.F.R. § 416.927(c).  A statement that identifies the relevant factors, even though brief, may be adequate to articulate "good reasons" to discount a treating physician's opinion.  *Allen*, 561 F.3d at 651.  The ALJ's decision concerning Dr. McLaughlin's opinion is supported by substantial evidence.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The undersigned, therefore, recommends that ALJ's decision be affirmed.

> s/ David A. Ruiz
> David A. Ruiz
> United States Magistrate Judge

Date:  July 24, 2019

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).